Columbia and Delaware Bridge Co. v. Geise et al.

---

THE COLUMBIA AND DELAWARE BRIDGE COMPANY, PLAINTIFFS, v. CHRISTIANA GEISE ET AL., DEFENDANTS.

1. An assessment for damages sustained by building plaintiffs' bridge over the river Delaware, made in favor of the widow and children of the former owner of a ferry, who died without disposing of his real estate, is good, although made to all jointly, they being in possession. How the damages are to be apportioned among them is a matter with which the plaintiffs have no concern. A satisfaction of the award of the commissioners will be a full discharge to the plaintiffs.

2. The charter of the company was granted in 1839; the ferry had been in existence many years before, and must have been within the contemplation of the legislature when provision was made in it for compensation in damages to the owners of ferries that might be injured by the erection of the bridge.

3. The act of 6th of March, 1856, giving legal authority to establish the ferry, and take such tolls as may be prescribed by the board of freeholders of the county—*held*, to be only a confirmation by express grant of the pre-existing rights of the ferry-owner, giving to him additional privileges and safeguards.

4. The right of property in the ferry did not depend on the act of 1856— and if no application was made to the board of freeholders to fix the rate of tolls, the right was neither forfeited nor lost.

5. The offer to arbitrate, made in writing, and in due form, and served on the president of the company, was a sufficient authority for the justice to appoint commissioners to appraise damages under the charter.

---

*Certiorari*, to set aside appointment of commissioners to assess damages to ferry-owners, by building a bridge over the Delaware.

Argued before DALRIMPLE and BEDLE, Justices.

Columbia and Delaware Bridge Co. v. Geise et al.

For plaintiffs, *J. G. Shipman.*

For defendants, *J. Vanatta.*

DALRIMPLE, J.   The *certiorari* in this case brings up the appointment, made by a justice of the peace of the county of Warren, of three freeholders, to appraise the damages sustained by the defendants, by reason of injury done to their ferry across the Delaware river, by the erection of the bridge of the plaintiffs over the same river.

The plaintiffs, by an act of the legislature of this state, passed March 3d, 1839, (*Laws of 1839, p. 151,*) were granted all the privileges and franchises incident to a corporation, as soon as two hundred shares of capital stock were subscribed for.   The object of the act was to enable the corporation to erect a bridge over the Delaware at Columbia, in the county of Warren.   By the ninth section of the act, it is provided that all damage done by the corporation, by entry upon lands for the purpose of obtaining materials necessary for building the bridge, shall be ascertained by the parties, if they can agree, or, if they cannot agree, by the appraisement thereof, to be made on oath, by three disinterested freeholders of the neighborhood, or any two of them, to be mutually chosen; but if either party, on due notice, should neglect or refuse to join in the choice, then the said freeholders to be appointed by a justice of the peace of the county.   By the fourteenth section of the act, it is enacted that the company shall have power to agree with any owners of ferries that may be injured by the erection of said bridge, and to compensate them for any damages that they may sustain; and if they cannot agree with such owners, in such case the damages shall be ascertained and paid in such manner as is provided in the ninth section.

On the 28th of August, 1869, the defendants made complaint in writing, duly verified, to a justice of the peace of the county of Warren, that the plaintiffs had erected a bridge over the said river at Columbia, and on the 18th of January

VOL. V.                    R

then last had commenced taking tolls for crossing passengers and vehicles, whereby the defendants' ancient ferry was superseded and its value destroyed. They prayed for the appointment of commissioners to assess their damages, in accordance with the provisions of the plaintiffs' charter. It satisfactorily appearing to the justice that the parties were unable to agree, and that the plaintiffs refused to arbitrate, and that the defendants were injured by the erection of the bridge, he made an appointment, after due notice to, and appearance before him of the plaintiffs, of three freeholders, to assess the damages alleged by the defendants to have been sustained by them by the erection of the plaintiffs' bridge. The object of this *certiorari* is to reverse and set aside that appointment.

I shall confine myself, in the consideration of the case, to those reasons for reversal which were urged on the argument.

The first reason is, that the petitioners to the justice for the appointment of freeholders show no joint interest in the ferry, and have no right to an assessment to them jointly. The ferry in question was the property of Henry Geise, who died in 1860, without having made any legal devise of his real estate. The petitioners for the appointment of freeholders are the widow and children of the deceased. The widow, since the death of her husband, has been, by consent of her children, in actual possession of the ferry, taking the rents and profits thereof. They were all, therefore, interested in the rights appertaining to the property at the time of the erection of the bridge, and it might have been good ground of objection if all had not joined in the proceedings. How the damages, when recovered, are to be apportioned among them is a matter with which the plaintiffs have no concern. The damages, if any there are, belong to the widow and heirs at law of the deceased. The injury, if any, is to them jointly. A satisfaction of the award of the commissioners will be a full discharge to the plaintiffs. This is all that they have a right, under the circumstances, to require.

It is insisted, in the second place, that the defendants have no rights of ferry which can be the subject matter of damages. The evidence is quite satisfactory that the ferry was in existence before the present century, and that Henry Geise, from the year 1827 to 1860, when he died, peaceably enjoyed all the privileges and benefits incident to a ferry. He kept up and maintained the particular ferry in question for more than thirty-three years, and when he died it passed into the possession and under the control of his widow and children, who continued in the enjoyment of the property until the year 1869, when the injury complained of was done. On the 6th of March, 1856, (*Laws of* 1856, *p.* 140,) the legislature passed an act authorizing Henry Geise to establish, keep, and maintain this ferry, and annexed words of inheritance to the grant, and prohibited all persons "using the said river for the purpose of a ferry within the distance of half a mile above and half a mile below the said ferry. That act is entitled "An act to establish a ferry across the Delaware river at Henry Geise's ferry, known by the name of 'Columbia Ferry,' in the village of Columbia, Warren county." If, when the plaintiffs erected their bridge, the defendants were not the owners of a ferry, it is difficult to imagine what evidence would establish title to such property. The argument, if I understand it, was, that the ferry had no legal existence, as such, till the passage of the act of 1856, and was not, therefore, within the contemplation of the legislature at the time of the passage of the plaintiff's charter. The answer to this argument is, in the first place, that the ferry was in existence long prior to the passage of the plaintiffs' charter. In the second place, the act of 1856, in effect, only confirms and ratifies, by express grant, the pre-existing rights of the ferry owner, and gives him additional privileges and safeguards.

In the third place, the plaintiffs *had no existence as a corporation till long after the passage of the act of* 1856, *according to the fair inference from all the facts and circumstances before us.* The ferries, the injuries to which by the erection of the

bridge are provided for in the fourteenth section of the plain-
tiffs' charter, are those ferries which might be in existence at
the time of the erection of the bridge. It can hardly be con-
ceived that the legislature intended to give the plaintiffs an
indefinite time within which to become a corporation and build
their bridge, and require them only to pay for the ferries in
existence when the act of incorporation was passed.

By the third section of the act of 1856, Geise is authorized
to receive such tolls for transporting persons and property
across the ferry as should be prescribed by the chosen free-
holders of the county of Warren. This is, in substance, the
same provision contained in the act concerning ferries, passed
6th of February, 1799, (*Nix. Dig.* 337,*) and which relates
to all ferries, except it may be to some having special exempt-
tion. It was insisted that it not appearing that Henry Geise
or those who have succeeded him had, since the passage of
the act of 1856, applied to the freeholders to fix the rate of
tolls, the defendants could not now claim any rights in the
ferry, if any they ever had. As already stated, the rights of
the defendants do not depend on the act of 1856, and if they
did, would not be forfeited or lost, because no application
had been made to the freeholders to fix the rate of tolls. The
rights of property in the ferry do not depend on the action
of the board of freeholders. Chancellor Kent, in the third
volume of his Commentaries, page 458, says, "an estate in
such a franchise, and an estate in land, rest upon the same
principle, being equally grants of a right or privilege for an
adequate consideration. In the case of *Peter* v. *Kendal*, 6 *B.
& C.* 703, the action was for disturbance of a ferry, and it
was held that the plaintiff was only bound to prove that
he was in possession of the ferry at the time when the cause of
action arose, and that it was not necessary for him to allege
or prove the payment of any specified sum for passage money.

The last objection is, that the offer to arbitrate should
have been presented to the board of directors of the bridge
company when convened in regular session. It was made

*Rev., p. 419.

in writing, in due and proper form, to the president of the company. This, I think, was sufficient.

The appointment of the commissioners by the justice was right, and must in all things be affirmed, with costs.

BEDLE, Justice, concurred.

AFFIRMED, 6 *Vr.* 558.
CITED *in Col. Del. Bridge Co.* v. *Geise*, 9 *Vr.* 40.